IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TARA HENDRIX,

           Plaintiff,

vs.                                  Case No. 13-1456-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments. The matter has been fully briefed by the parties.

## I.  General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

   The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

w

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 31, 2012, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 11-25). Plaintiff alleges that she had been disabled since March 1, 2010 (R. at 11). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the application date of March

15, 2010 (R. at 13). At step two, the ALJ found that plaintiff had severe impairments of diabetes mellitus, obesity, hiatal hernia, history of bilateral carpal tunnel syndrome, degenerative changes of the lumbar spine, bipolar disorder, generalized anxiety disorder, and personality disorder (R. at 13). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13). After determining plaintiff's RFC (R. at 15), the ALJ determined at step four that plaintiff has no past relevant work (R. at 23). At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 24). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 25).

**III. Did the ALJ properly weigh the medical opinion evidence when determining plaintiff's mental RFC?**

The ALJ limited plaintiff to light work. Regarding mental limitations, the ALJ stated that plaintiff has the ability to understand complex instructions but would only be able to maintain concentration, persistence and pace to carry out simple and some intermediate level instructions. He found that she could adapt to normal changes in an environment that limits contact with co-workers and general public to occasional (R. at 15).

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately

assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

On June 5, 2008, Dr. Whitten, a clinical psychologist, performed a psychological evaluation on the plaintiff at the request of SRS.  He summarized his findings as follows:

> …She told me that she on occasion has a hallucination of seeing [her ex-husband] walking up the road towards her house, no doubt a persecutory delusional form of thinking as well.  Though her emotional status is highly troubled and she might be subject to a Bipolar Disorder with psychotic features, she has avoided needed contact with evaluator and treatment sources so far. The picture is further complicated by the possibility of significant brain damage with loss of ability and achievement levels.  She is continuing her efforts to obtain Social Security disability benefits, an appropriate move on her part…She clearly has not demonstrated enough stable behavior in any area of her life to assure me that she can sustain any job long term.  She should as well be strongly urged to get further evaluation and treatment for her emotional and social difficulties.

(R. at 399).

The ALJ never mentioned this evaluation in his decision, although it is part of the record.  Defendant argues in his brief that the ALJ did not need to mention this report because it pre-dated her onset date (Doc. 16 at 15).  Plaintiff filed for supplemental security income payments (SSI) on March 15, 2010, alleging an onset date of March 1, 2010 (R. at 11).

8

Plaintiff cannot receive SSI benefits for any period prior to the filing of their application. Kepler v. Chater, 68 F.3d 387, 389 (10th Cir. 1995); 20 C.F.R. § 416.335. Thus, in an SSI case, the alleged onset date for purposes of receiving benefits becomes the date of the filing of the application.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215(10th Cir. 2004). Even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to claimant's medical history and should be considered by the ALJ. Id. In Hamlin, the court found that the ALJ failed to adequately consider the opinions of two physicians whose opinions covered a five year period preceding the relevant period of the claimant's current application. Id. at 1213, 1216-1220. Later, the court noted other medical reports, stating that while these medical reports date from an earlier adjudicated period, they are nonetheless part of claimant's case record and should have been considered by the ALJ. Id. at 1222, n. 15. As the court indicated in Hamlin, the Commissioner will evaluate every medical opinion that he receives. 20 C.F.R. § 404.1527(c).

In the case of Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005), the Commissioner argued that a medical

record was irrelevant to the period under review because the opinions were expressed several months before the alleged onset date of plaintiff's disability.  The court, citing to Hamlin, stated that "no authority is cited for the proposition that medical reports prior to the operative onset date are categorically irrelevant, and, indeed, our precedent is to the contrary"  Id.  The ALJ should have considered the opinions of Dr. Whitten, especially in light of the subsequent medical source opinions regarding plaintiff's mental limitations by other examining and/or treating medical sources.

On May 18, 2010, a mental status examination was conducted Dr. Hough, a clinical psychologist (R. at 421-426).  He found that plaintiff's thought processes demonstrate psychotic tendencies.  Plaintiff becomes easily derailed, often is tangential.  She offers improbable if not impossible stories (R. at 424).  Dr. Hough stated that plaintiff offered numerous instances of poor judgment and impulsivity that would be consistent with a Bipolar diagnosis (R. at 425).  Dr. Hough concluded his report as follows:

> Regarding money management, the claimant
> reports that she manages funds independently
> and without assistance at home.  However,
> her history of impulsivity, of poor
> judgment, would suggest that she would be at
> risk for poor money management.  Also, at
> this juncture, the claimant's
> psychopathology is so fraught with psychotic
> symptomatology and mood dysregulation that I

10

>do not believe that she could engage in
>simple unskilled work at competitive level
>over an eight hour day.

(R. at 426). The ALJ found that this opinion is contradicted by plaintiff's testimony that she independently manages her household finances, raises two young children, shops, cooks, cleans and is able to engage in child and self-grooming. The ALJ also noted that the opinion of Dr. Hough is on an issue reserved to the Commissioner (R. at 23).

In discounting the opinions of Dr. Hough, the ALJ placed great emphasis on plaintiff's daily activities. According to the regulations, activities such as taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities or social programs are generally not considered to constitute substantial gainful activity. 20 C.F.R. § 404.1572(c) (2013 at 399). Furthermore, although the nature of daily activities is one of many factors to be considered by the ALJ when determining the credibility of testimony regarding pain or limitations, Thompson v. Sullivan, 987 F.2d 1482, 1489 (10th Cir. 1993), the ALJ must keep in mind that the sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity. Krauser v. Astrue, 638 F.3d 1324, 1332-1333 (10th Cir. 2011); Thompson, 987 F.2d at 1490.

In the case of Draper v. Barnhart, 425 F.3d 1127, 1130-1131 (8th Cir. 2005), the ALJ noted that the claimant engaged in household chores, including laundry, grocery shopping, mowing, cooking, mopping and sweeping.  The ALJ concluded that claimant's allegations of disabling pain were inconsistent with her reports of her normal daily activities and were therefore not deemed credible.  The court found that substantial evidence did not support this conclusion, holding as follows:

> **The fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work.**  As we said in McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc), the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." In other words, evidence of performing general housework does not preclude a finding of disability.  In Rainey v. Dep't of Health & Human Servs., 48 F.3d 292, 203 (8th Cir.1995), the claimant washed dishes, did light cooking, read, watched TV, visited with his mother, and drove to shop for groceries.  We noted that these were activities that were not substantial evidence of the ability to do full-time, competitive work. In Baumgarten v. Chater, 75 F.3d 366, 369 (8th Cir.1996), the ALJ pointed to the claimant's daily activities, which included making her bed, preparing food, performing light housekeeping, grocery shopping, and visiting friends.  We found this to be an unpersuasive reason to deny benefits: "**We have repeatedly held...that 'the ability to do activities such as light**

> **housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work**.'" Id. (quoting <u>Hogg v. Shalala</u>, 45 F.3d 276, 278 (8th Cir.1995)). Moreover, we have reminded the Commissioner
>
>> **that to find a claimant has the residual functional capacity to perform a certain type of work, the claimant must have the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world...The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity**.
>
> <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir.1989) (citations omitted).

<u>Draper</u>, 425 F.3d at 1131 (emphasis added).  Therefore, the fact that plaintiff raises children, shops, cooks, cleans and can engage in grooming of herself and her young children does not demonstrate that plaintiff can engage in simple unskilled work at a competitive level over an 8 hour day.

   On December 16, 2010, another consultative report was done by Dr. Berg (R. at 495-498).  The ALJ stated that he agrees with Dr. Berg's opinion that plaintiff "has the ability to perform some simple tasks efficiently" (R. at 22).  The ALJ therefore gave this opinion substantial weight (R. at 22).  However, the

full text of Dr. Berg's report regarding plaintiff's ability to perform work related activities is as follows:

> The Claimant's ability to attend to and process simple information is extremely erratic. Although she can perform some simple tasks efficiently, she demonstrates a propensity for gross deterioration in her ability to pay attention, such that she can make gross errors and not persist, as she becomes overwhelmed and confused. Her ability to learn and retain new information is at least mildly limited.
>
> The Claimant was able to adhere to the structure of the consultation, although it was also necessary to actively structure her to keep her on track. She made several loose and peculiar comments. She is given to inappropriate laughter and modes of interaction. According to her history, she is also vulnerable to surges of violent anger. She does not tolerate interpersonal contact, for fear that she will lose control of her rage.

(R. at 498). Although Dr. Berg did state that plaintiff can perform some simple tasks efficiently, the ALJ failed to mention that Dr. Berg also stated that her ability to attend to and process simple information is extremely erratic, and that she demonstrates a propensity for gross deterioration in her ability to pay attention, such that she can make gross errors and not persist as she becomes overwhelmed and confused. Dr. Berg also stated that her history shows that she is vulnerable to surges of violent anger, and does not tolerate interpersonal contact, for fear that she will lose control of her rage. However,

14

despite giving "substantial weight" to this opinion, none of these other impairments and limitations were included in the RFC findings.

In the case of Martinez v. Astrue, 422 Fed. Appx. 719, 724-725 (10th Cir. Apr. 26, 2011), the court held that the ALJ erred by failing to include all of the limitations found by Dr. LaGrand without explaining why he rejected some of the limitations, especially in light of the ALJ's conclusion that the medical source's opinion was entitled to "great weight." The ALJ simply ignored certain limitations contained in the medical report. The court held that the ALJ may have had reasons for giving great weight to some of the limitations set forth by the medical source, while rejecting other limitations. However, before rejecting some of the limitations, the ALJ was required to discuss why he did not include those limitations. An ALJ must explain why he rejected some limitations contained in a RFC assessment from a medical source while appearing to adopt other limitations contained in the assessment. Haga v. Astrue, 482 F.3d 1205, 1207-1208 (10th Cir. 2007); Frantz v. Astrue, 509 F.3d 1299, 1302-1303 (10th Cir. 2007); Wilson v. Colvin, 541 Fed. Appx. 869, 872-874 (10th Cir. Oct. 16, 2013).

The ALJ erred by failing to include in his RFC findings all of the opinions of Dr. Berg without explaining why he rejected some of the limitations found by Dr. Berg, especially in light

15

of the ALJ's conclusion that Dr. Berg's opinion was entitled to "substantial" weight. Furthermore, the opinions of Dr. Berg should be considered in light of the opinions of the other examining and/or treating medical sources regarding plaintiff's mental limitations.

Finally, Dr. Handshy, a treating physician, prepared a medical source statement-mental on September 20, 2011 opining that plaintiff had marked limitations 7 categories, and moderate limitations in 13 categories (R. at 620-621). Among his findings, Dr. Handshy found that plaintiff was markedly limited in her ability to complete a normal workday/workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The ALJ gave these opinions little weight, finding that they are not supported by treatment notes or plaintiff's statements, including her daily activities (R. at 22).

In making his mental RFC findings, the ALJ gave substantial weight to two non-examining medical sources, Dr. Stern (R. at 427-443), and Dr. Blum (R. at 500-518). However, as noted above, the opinions of non-examining medical sources are generally entitled to the least weight of all. All four examining and/or treating sources, Dr. Whitten, Dr. Hough, Dr. Blum and Dr. Handshy indicated that plaintiff had major mental

16

impairments that would likely preclude employment. However, the ALJ ignored the report of Dr. Whitten. Furthermore, despite giving "substantial" weight to the opinions of Dr. Berg, the ALJ, without explanation, failed to include in his mental RFC findings many of the findings noted by Dr. Berg in his report. Finally, the ALJ relied on daily activities of the plaintiff to discount the opinions of both Dr. Hough and Dr. Handshy even though such tasks, as discussed above, do not demonstrate that plaintiff can engage in simple unskilled work at a competitive level over an 8 hour day. For these reasons, the court finds that substantial evidence does not support the ALJ's mental RFC findings.

On remand, the ALJ must not consider the opinions of the treating and examining sources in isolation, but their opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of the other treating and examining sources. The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for the ALJ to take this into consideration. See <u>Lackey v. Barnhart</u>, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 17th day of March 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge